1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

GARRET A. THERRIAULT,

7
                                Plaintiff,

8          v.

9    NANCY BERRYHILL, Acting
     Commissioner of Social Security,

10
                                Defendant.

Case No. 2:17-cv-00062-JCC-TLF

REPORT AND
RECOMMENDATION

Noted for January 12, 2018

11

12          Plaintiff has brought this matter for judicial review of defendant's denial of his

13   applications for disability insurance and supplemental security income (SSI) benefits. This

14   matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v.*

15   *Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

16          For the reasons set forth below, the undersigned finds that the Administrative Law Judge

17   ("ALJ") erred when he failed to: (1) properly consider the opinions of Jon Berner, M.D., Ph.D.,

18   plaintiff's treating physician, and Rebecca Plevin, M.D., plaintiff's examining physician; (2)

19   properly consider the lay witness testimony of plaintiff's mother, Jill Harrison, and (3) provide

20   specific, clear and convincing reasons for finding plaintiff's subjective symptom testimony was

21   not fully supported. Because the ALJ's errors are harmful, the undersigned recommends that the

22   Court reverse defendant's decision to deny benefits and remand this matter for further

23   administrative proceedings.

24

25

## FACTUAL AND PROCEDURAL HISTORY

On February 2, 2013, plaintiff filed an application for disability insurance benefits and another one for SSI benefits on February 19, 2013, alleging in both applications that he became disabled beginning November 11, 2010. Dkt. 10, Administrative Record (AR) 12, 155-56. Both applications were denied on initial administrative review and on reconsideration. AR 199, 201, 207, 209. An initial hearing (6-3-2014) and a supplemental hearing (11-20-2014) were held before an ALJ at which plaintiff appeared and testified, as did a lay witness, two medical experts, and two vocational experts. AR 12, 59-154.

In a written decision dated April 13, 2015, the ALJ documented his analysis at each of the five steps. AR 12-24. Steps one, two and three were resolved in plaintiff's favor. The ALJ considered plaintiff's residual functional capacity and found at step four that plaintiff could not perform his past relevant work. AR 22. But the ALJ found at step five that plaintiff could perform jobs that exist in significant numbers in the national economy and therefore he was not disabled. AR 23-24.

Plaintiff's request for review was denied by the Appeals Council on November 15, 2016, making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed in a complaint filed with this Court on January 14, 2017. AR 1, 8; Dkt. 1; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence from Dr. Berner and examining physician, Rebecca Plevin, M.D.; (2) in discounting plaintiff's credibility; and (3) in rejecting the lay witness evidence from plaintiff's mother, Jill Harrison.

DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.    The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff asserts the ALJ failed to properly consider the opinion evidence submitted by treating physician Dr. Berner and examining physician Dr. Plevin. Dkt. 12.

1       Three types of physicians may offer opinions in Social Security cases: "(1) those who

2   treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the

3   claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant

4   (non-examining physicians)." *Lester,* 81 F.3d at 830. A treating physician's opinion is generally

5   entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff,

6   and an examining physician's opinion is generally entitled to more weight than that of a non-

7   examining physician. *Id.* A non-examining physician's opinion may constitute substantial

8   evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31;

9   *Tonapetyan*, 242 F.3d at 1149. An ALJ need not accept the opinion of a treating physician, "if

10  that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the

11  record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004);

12  *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d

13  1144, 1149 (9th Cir. 2001).

14      Even when a treating or examining physician's opinion is contradicted, an ALJ may only

15  reject that opinion "by providing specific and legitimate reasons that are supported by substantial

16  evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of

17  Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all*

18  evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393,

19  1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain

20  why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d

21  700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

22      "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing

23  nothing more than ignoring it, asserting without explanation that another medical opinion is more

24

25

persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

### a.    Dr. Berner – Treating Physician

Plaintiff alleges the ALJ erred in rejecting the opinions of his treating physician, Jon Berner, M.D., Ph.D.. Dkt. 12 at 1-7. Plaintiff contends the ALJ failed to evaluate the frequency of treatment, nature and extent of the treatment relationship, Dr. Berner's specialization in mitochondrial disease, or the supportability of his opinion. *Id.*

Dr. Berner, a biological psychiatrist with an undergraduate degree in psychology, an M.D. degree, and a Ph.D. degree in neuroscience, treated plaintiff beginning in 2010. AR 107, 108, 118. He reviewed plaintiff's symptoms and opined that plaintiff has a mitochondrial disorder, which is a disorder of energy production. AR 108-110. 115, 478. Dr. Berner considered diagnostic testing for serum alanine levels and genetic testing to show defects in plaintiff's mitochondrial DNA. *Id.* Dr. Berner also considered plaintiff's symptoms over the past several years, and his family history. *Id.* Dr. Berner opined that plaintiff "would not be able to maintain regular employment and would very frequently miss days of work, often several times a week." AR 478. The ALJ gave Dr. Berner's opinion "little weight," reasoning that Dr. Berner's functional assessment was inconsistent with plaintiff's treatment history. AR 21-22. The ALJ

1    also stated that although Dr. Berner was a medical doctor, he was practicing as a psychiatrist,

2    and had never conducted a physical examination on plaintiff. AR 22.

3         Plaintiff argues that the ALJ was required to provide clear and convincing reasons to

4    reject Dr. Berner's uncontradicted opinion. Dkt. 12 at 3. *Trevizo v. Berryhill*, 871 F.3d 664, 675

5    (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (The

6    ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

7    either a treating or examining physician.).

8         Plaintiff concedes that Dr. Plevin assessed that plaintiff could perform sedentary tasks,

9    but argues Dr. Plevin did not address whether plaintiff could do so on a regular and continuous

10   basis, and thus Dr. Plevin's opinion was not inconsistent with Dr. Berner. Dkt. 12 at 3, 5.

11   Plaintiff also argues that only Dr. Berner expressed an opinion regarding plaintiff's excessive

12   need for sleep. *Id.* at 3. Although the two physicians do not directly contradict one another,

13   because Dr. Plevin's assessment indicates less limitations in plaintiff's ability to perform work-

14   related activities, the Court can infer that at least on one point, Dr. Berner's opinion was

15   inconsistent with Dr. Plevin. *Compare* AR 455 (Dr. Plevin assessed that plaintiff had maximum

16   sitting capacity in an eight-hour work day with normal breaks and no limitations.) *with* AR 478

17   (Dr. Berner opined that plaintiff would not be able to maintain regular employment and would

18   frequently miss days of work.). Thus, the ALJ was only required to provide specific and

19   legitimate reasons supported by substantial evidence when he rejected Dr. Berner's opinion. *See*

20   *Trevizo*, 871 F.3d at 675.

21        Here, having decided not to afford Dr. Berner's opinion controlling weight, the ALJ was

22   required to analyze the factors under 20 CFR 404.1527(c). Contrary to plaintiff's contention, the

23   ALJ addressed these factors in his opinion. The ALJ summarized plaintiff's treatment record

24

25

REPORT AND RECOMMENDATION - 6

with respect to Dr. Berner, indicating that the ALJ considered the nature, extent and frequency of the relationship, as well as the supportability of Dr. Berner's opinion and Dr. Berner's specialization (finding that Dr. Berner was a medical doctor, but practicing as a psychiatrist). AR 19, 21-22. Thus, while the undersigned does not find that the ALJ's decision was supported by substantial evidence, the ALJ did consider the appropriate factors under section 404.1527(c).

With respect to the ALJ's reasoning that Dr. Berner's opinion is inconsistent with plaintiff's longitudinal treatment record, AR 22, the undersigned finds that the record does not support the alleged inconsistencies. For example, the ALJ cites to a visit with Dr. Berner on October 4, 2012, in which Dr. Berner found that plaintiff had an adequate quality of life, but that plaintiff had days of severe fatigue and weakness and he could barely get up the stairs. AR 434. The ALJ also points to an April 2013 evaluation, wherein the treatment record shows "no major changes." AR 432. However, the objective clinical notes from that visit *also* state that plaintiff's mother noted "profound periods of hypersomnia unpredictably from 18-20 hours at a time. Some days [plaintiff] walk[s] other days he can barely make it up the stairs." *Id.* In November 2013, plaintiff was getting worse as winter approached, but his depression and pain were tolerable. AR 467. Plaintiff's mother noted continued pain flares to the point where she would find plaintiff crawling from his bedroom. *Id.*

The ALJ found that in 2014, plaintiff continued to have an adequate quality of life, but the treatment records from that time period reflect otherwise. AR 22. For example, on February 17, 2014, at an appointment with Dr. Berner, plaintiff's mother noted "progressive anorexia and vomiting with severe weight loss," and that plaintiff was too tired to leave the house to make the appointment.AR 466. Two days later, on February 19, 2014, plaintiff had fatigue and increased anorexia/vomiting. AR 465. In finding that Dr. Berner's opinion was inconsistent with the

1   treatment record, it appears that the ALJ ignored this evidence and instead, selectively picked the

2   statements that supported his conclusion. "[I]t is an error for an ALJ to pick out a few isolated

3   instances of improvement over a period of months or years and to treat them as a basis for

4   concluding that a claimant is capable of working." *Garrison v. Colvin,* 759 F.3d 995, 1017 &

5   n.23 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting

6   that a claimant's condition must be evaluated "in the context of the overall diagnostic picture").

7   Thus, the ALJ's finding that Dr. Berner's opinion was inconsistent with the treatment record is

8   not supported by substantial evidence.

9          Next, the ALJ also discounted Dr. Berner's opinion on the basis that Dr. Berner never

10   conducted a physical examination of plaintiff and that Dr. Berner was practicing as a

11   psychiatrist. AR 22, 138. The ALJ did not provide any sensible reasons for the ALJ's assessment

12   that Dr. Berner, a medical doctor and practicing psychiatrist, was not credible. The record shows

13   that Dr. Berner had been the primary physician for plaintiff for more than four years at the time

14   of the June 2014 hearing, he had diagnosed plaintiff with this disorder, he evaluated the results of

15   blood testing that reflected issues with plaintiff's amino acid level of alanine and DNA (blood

16   tests would be physical, objective, non-symptom evidence), and he was treating plaintiff for his

17   mitochondrial disorder. AR 448, 466, 470-478.

18          Moreover, the ALJ failed to explain why a physical examination was necessary. AR 22.

19   Plaintiff complains of pain and fatigue, and a physical examination would not necessarily be

20   required to evaluate the severity of plaintiff's symptoms. In addition, Dr. Berner's clinical

21   observations appear to have been supported by diagnostic and genetic testing that reflected

22   elevated serum alanine levels, consistent with others also suffering from mitochondrial disorder.

23   AR 407-78. Thus, the undersigned concludes that the ALJ's decision to discount Dr. Berner's

24

25

1    opinion based on Dr. Berner's failure to conduct a physical examination and purported lack of

2    specialization was not based on substantial evidence.

3         The ALJ also discounted Dr. Berner's opinion on the basis that it was "based[,] at least in

4    part[,] on the claimant's self-report of pain, hypersomnia, and fatigue, but as noted, he is not

5    entirely credible." AR 22. According to the Ninth Circuit, "[an] ALJ may reject a treating

6    physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been

7    properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

8    (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v.*

9    *Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which

10   the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.*

11   *Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not

12   provide clear and convincing reasons for rejecting an examining physician's opinion by

13   questioning the credibility of the patient's complaints where the doctor does not discredit those

14   complaints and supports his ultimate opinion with his own observations"); *see also Edlund v.*

15   *Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an

16   opinion is not more heavily based on a patient's self-reports than on clinical observations, there

17   is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th

18   Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir.

19   2008)).

20        Here, the ALJ failed cite to any specific evidence to support his conclusion. *See* AR 22.

21   Based on a review of the relevant record, in support of his opinion, Dr. Berner considered

22   diagnostic and genetic testing, third-party observations, family medical history, and his own

23   medical knowledge. *See* AR 112 (mother's observations in treatment notes), 432 (same), 466-67

24

25

1    (same), 470-77 (genetic testing results), 481 (noting family history). For example, Dr. Berner

2    referenced plaintiff's elevated serum alanine levels on repeating testing, as well as genetic testing

3    showing that there were possible issues in plaintiff's mitochondrial DNA. AR 470-78. Dr. Berner

4    stated the test results were consistent with plaintiff's symptoms and his family history of

5    anesthetic sensitivity and kinetosis in his mother. AR 478, 481. Therefore, the ALJ's decision to

6    discount Dr. Berner's opinion based on Dr. Berner's reliance on plaintiff's self-reports was not

7    based on substantial evidence.

8         Thus, the undersigned concludes that the ALJ erred when he gave little weight to Dr.

9    Berner's opinion. "[H]armless error principles apply in the Social Security context." *Molina v.*

10   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not

11   prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability

12   determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir.

13   2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless

14   requires a "case-specific application of judgment" by the reviewing court, based on an

15   examination of the record made "'without regard to errors' that do not affect the parties'

16   'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (*quoting Shinseki v. Sanders*, 556 U.S. 396,

17   407 (2009)).

18        Had the ALJ properly considered Dr. Berner's opinion, he may have included additional

19   limitations in the RFC and in the hypothetical questions posed to the vocational experts ("VE").

20   *See* AR 18, 69, 74-75, 148-149. For example, Dr. Berner opined that plaintiff's would not be

21   able to maintain regular employment and would frequently miss days of work, often several

22   times a week. *See* AR 478. The RFC did not contain this limitation. AR 18. In fact, the VE

23   testified that the level of absenteeism described by Dr. Berner would prevent sustained

24

25

REPORT AND RECOMMENDATION - 10

1    employment. AR 148-149. Therefore, the ALJ's error is not harmless and the undersigned

2    recommends remanding for further consideration of Dr. Berner's opinion.

3              b.      Dr. Plevin – Examining Physician

4          Next, plaintiff alleges the ALJ erred in rejecting the manipulative limitations identified

5    by Rebecca Plevin, M.D.. Dkt. 12 at 11-13. Plaintiff contends the ALJ failed to develop the

6    record with respect to his ability to draw for four hours at a time. *Id.* at 11.

7          Dr. Plevin found that plaintiff had: (1) 4+/5 motor strength in his bilateral upper

8    extremities; (2) normal range of motion in his elbows, wrists and hands; (3) no tenderness

9    palpation, crepitus effusions, discoloration, or deformities in his elbow, wrist, and hands; and (4)

10   deep tendon reflexes of 3+ in his upper extremities. AR 454. Dr. Plevin assessed plaintiff's

11   "manipulative activities are limited to occasional reaching, handling, fingering, and feeling

12   secondary to myalgias in bilateral upper extremities." AR 455.

13         The ALJ rejected Dr. Plevin's determination that plaintiff could only occasionally reach,

14   handle, finger and feel. AR. 21. The ALJ reasoned that the record does not establish any upper

15   extremity impairment that would warrant specific manipulative limitations and that plaintiff can

16   draw/stencil for up to four hours at a time. *Id.*

17         As an initial matter, although the ALJ does not directly explain the correlation between

18   drawing/stenciling and reaching, handling, and fingering, given that the use of the hands and

19   fingers are involved, the Court can infer that these two activities are similar. First, the ALJ cited

20   to the longitudinal record and specifically, that the record lacks any evidence demonstrating a

21   limitation on plaintiff's use of his hands. AR 21; *See generally* AR 398-481 (medical records);

22   AR 453-454 (Dr. Plevin's evaluation: normal range of motion in elbows, wrists, fingers; bilateral

23   fingers well-healed; 4+/5 strength in upper extremities; intact sensation); AR 478 (Dr. Berner's

24   medical report noting no upper extremity limitations). The Court finds that the evidence

25

undermines Dr. Plevin's opinion that plaintiff could not do more than occasionally reach, handle and finger, and serves as a specific and legitimate reason to discount her opinion.

However, with respect to the inconsistency between Dr. Plevin's opinion and plaintiff's testimony that he draws up to four hours at a time, the ALJ did not offer "specific and legitimate" reasons for rejecting Dr. Plevin's opinion on this basis. *Trevizo,* 871 F.3d at 676 (citing *Ryan*, 528 F.3d at 1198 (quoting *Bayliss*, 427 F.3d at 1216)). Here, the ALJ referred to plaintiff's ability to draw/stencil up to four hours as a reason for rejecting Dr. Plevin's opinion that plaintiff can only occasionally reach, handle, and finger. AR 22.

SSR 96-9p defines "occasionally" as "occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday." Thus, on its face, it appears that plaintiff's testimony is contradictory, and that this may be a valid reason to reject this portion of Dr. Plevin's opinion. However, the record provides no details as to the level, extent, consistency, or frequency of plaintiff's drawing/stenciling including whether plaintiff is able to draw on his bad days or just good days, whether he is able to draw for longer than 4 hours, or whether he is required to stop drawing/stenciling after four hours due to his medical conditions. *See Trevizo v. Berryhill,* 871 F.3d 664, 676 (9th Cir. 2017) (holding that the ALJ did not develop a record regarding the extent to which and the frequency with which the plaintiff cared for her young adoptive children and therefore, failed to offer specific and legitimate reasons for rejecting a treating physician's opinion). Although "the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record," *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the Court cannot find that the ALJ reasonably inferred that drawing/stenciling for four hours, without more information, indicated that plaintiff's use of his upper extremities was not as limited as Dr. Plevin found.

1    Because the ALJ failed to develop the record, this activity cannot constitute "substantial

2    evidence" inconsistent with Dr. Plevin's opinion.

3         Had the ALJ properly considered Dr. Plevin's opinion, he may have included additional

4    limitations in the RFC and in the hypothetical questions posed to the vocational experts ("VE").

5    *See* AR 18, 69, 74-75, 148-149. For example, Dr. Plevin opined that plaintiff could only

6    occasionally reach, finger, and handle, but the RFC did not contain this limitation. AR 18, 20-21.

7    In addition, the ALJ did not include such a limitation in his hypothetical questions to the

8    vocational expert. Therefore, the ALJ's error is not harmless and the undersigned recommends

9    remanding for further consideration of Dr. Plevin's opinion.

10   II.    The ALJ's Assessment of Plaintiff's Credibility

11        Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642.

12   The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In

13   addition, the Court may not reverse a credibility determination where that determination is based

14   on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a

15   claimant's testimony are properly discounted, that does not render the ALJ's determination

16   invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*,

17   242 F.3d 1144, 1148 (9th Cir. 2001).

18        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

19   reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

20   testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also*

21   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

22   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

23   and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of

24   malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

25

In determining a claimant's credibility, the ALJ may consider a claimant's prior inconsistent statements concerning symptoms, *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Plaintiff alleges the ALJ erred in evaluating plaintiff's credibility with respect to: (1) objective medical evidence; (2) plaintiff's activities of daily living; and (3) plaintiff's unemployment benefits. Dkt. 12 at 7-11.

a.    <u>Activities of Daily Living</u>

Plaintiff alleges the ALJ failed to make any connection between plaintiff's listed daily activities and his symptoms. Dkt. 12 at 9-10. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. *Smolen*, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).

First, such activities can "meet the threshold for transferable work skills." *Id.* A claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7. Second, a claimant's activities of daily living can "contradict his other testimony." *Orn,* 495 F.3d at 639. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

With respect to his typical schedule, plaintiff testified he: (1) sleeps 18 hours per day; (2) sleeps 30 to 36 hours straight once per week; (3) cannot move for three to four hours after waking, due to pain; (4) draws/stencils for up to four hours; (5) reads magazines; and (6) watches movies. AR 77-79, 82-90. With respect to plaintiff's activities, he testified that he: (1) goes to the

store approximately once per month; (2) takes the dogs for a walk twice per week; (3) went to a car show in the past three years; (4) saw a movie in the last seven or eight months; and (5) went to the mall once in the last two months. AR 82-90.

Plaintiff's testimony is similar to his function report, which plaintiff's mother completed for him. Plaintiff reported daily weakness and severe muscle pain, and that some days he has no energy and sleeps for 18 hours at a time. AR 329. Plaintiff's mother takes care of his cats and must drive him to his appointments. AR 333. On "good days" plaintiff can do laundry, vacuum, and clean. AR 331.

The ALJ found that plaintiff's daily activities are inconsistent with his allegations of disabling functional limitations. AR 20. The ALJ reasoned that plaintiff and his mother reported that she provided significant assistance – ensuring he got out of bed and driving plaintiff to appointments, which was contradicted by plaintiff's ability to go outside alone, drive, and shop. *Id.* The ALJ found that there is "no indication that he has had any difficulty maintaining his schedule and making it to his appointments. He alleges inability to work on automobile engines due to injuries in his fingers, but he enjoys stenciling/drawing." *Id.* The ALJ found that the evidence suggests that plaintiff is more independent and capable in his daily activities than alleged. *Id.*

The ALJ's reasons are not convincing when reviewing the record as a whole and weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *See Desrosiers v. Sec'y of Health and Hum. Servs.,* 846 F.2d 573, 576 (9th Cir. 1988). Here, the ALJ did not address the limited nature of plaintiff's daily activities or determine whether such activities were transferable to the work place. *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) (the record shows the ALJ mischaracterized statements and documents in the record to reach the conclusion that plaintiff exaggerated his symptoms).

As an initial matter, the Court notes that the treatment records reflect that plaintiff is able to get out of bed and function for six to eight hours on a good day. AR 452. However, the fact that plaintiff was able to perform some limited basic activities on "good" days does not undermine his testimony. The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see Reddick*, 157 F.3d at 722.

Nevertheless, contrary to the ALJ's findings, there is no evidence that plaintiff drives, shops, or does any other activity on a daily basis. AR 77, 82-90. On bad days, plaintiff remains in bed all day due to fatigue, myalgias, and extremity weakness. AR 452. The record indicates that plaintiff typically sleeps 18 hours per day, and a period of 30 to 36 hours once per week. AR 77-79, 329-333, 458. When plaintiff wakes up, it takes three to four hours until he is able to move. AR 80, 329. Plaintiff goes to the store once a month, and has been to the mall once in the last two months days. AR 89-90, 332. Plaintiff goes outside every other day, but does not go anywhere outside the house on a regular basis. AR. 332-33. Plaintiff relies heavily on his mother for assistance with most of his daily living activities, including cooking, laundry, and maintaining appointments. AR 93-94, 458. With respect to plaintiff's ability to draw/stencil, but not work on automobiles, plaintiff testified that he chooses not to work on engines any more for

1    safety concerns because plaintiff severely cut his fingers, due to weakness, while trying to use a

2    sawing tool. AR 77. The same safety-related concerns would not apply to drawing or stenciling.

3        The ALJ views plaintiff as a normal functioning adult who carries out various domestic

4    responsibilities without difficulty. However, the record does not support that conclusion. Thus,

5    this is not a valid reason to discount plaintiff's credibility.

6        b.    Unemployment and Infrequent Course of Treatment

7        Plaintiff contends the ALJ failed to provide any details regarding plaintiff's

8    unemployment benefits, and thus, could not reasonably infer that plaintiff's application for

9    benefits contradicted his disability. Dkt. 12 at 10. The ALJ concluded that "[plaintiff's]

10   collection of unemployment benefits in 2010/2011 reduces his credibility, particularly when his

11   relatively infrequent course of treatment during the same period is considered." AR 20.

12       "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to

13   work fulltime" when a claimant has held himself out as available for full-time work. *Carmickle*

14   *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). However, the record does

15   not support the ALJ's finding. The parties do not cite, nor does the Court find, a copy of

16   plaintiff's certification or application for unemployment benefits in the record.

17       There is no evidence showing that plaintiff held himself out as capable of full-time work.

18   *See, e.g.*, *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir.

19   2008) (where the record "does not establish whether [the claimant] held himself out as available

20   for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported

21   by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations").

22   Therefore, this is not a valid reason to discount plaintiff's credibility.

23       With respect to the allegedly infrequent course of treatment between 2010 and 2011, an

24   ALJ may properly rely on evidence which shows "an unexplained, or inadequately explained,

25

1   failure to seek treatment or follow a prescribed course of treatment" to discount a plaintiff's

2   statements. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see* SSR 96-7p 1996 SSR LEXIS

3   4, *21-22 ("the individual's statements may be less credible if the level or frequency of treatment

4   is inconsistent with the level of complaints. . . . and there are no good reasons for this failure").

5   Further, "if a claimant complains about disabling pain but fails to seek treatment, or fails to

6   follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the

7   complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638.

8          The ALJ did not cite specific evidence demonstrating that plaintiff failed to seek

9   treatment in 2010 and 2011. The record reflects that plaintiff went to appointments with Dr.

10  Berner on seven occasions between 2010 and 2011. AR 437-449. The ALJ noted that "[t]here

11  is no indication that [plaintiff] has any difficulty maintaining his schedule and making it to his

12  appointments." AR 20. After reviewing the record, the Court finds there is not substantial

13  evidence supporting the ALJ's decision to discount plaintiff's testimony based on an alleged lack

14  of treatment in 2010 and 2011.

15         c.    Objective Medical Evidence

16         The Court has determined the ALJ's first three reasons for discounting plaintiff's

17  subjective symptom testimony are improper. The only remaining reason for discounting

18  plaintiff's complaints is because the complaints are inconsistent with the objective evidence.

19         Determining a claimant's complaints are "inconsistent with clinical observations" can

20  satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*,

21  166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir.

22  2011). However, a claimant's pain testimony may not be rejected "solely because the degree of

23  pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748,

24  749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en

25

banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

As discussed above, the other reasons the ALJ provided for discounting plaintiff's credibility are not legally sufficient. The ALJ thus cannot rely solely on inconsistency with the objective medical evidence to support his credibility determination. In addition, as also discussed above, the ALJ erred in his evaluation of the medical opinion evidence from Dr. Berner. As such, the undersigned finds the ALJ has not provided legally sufficient reasons for discounting plaintiff's subjective symptom testimony.

d.      Harmless Error

Plaintiff testified to greater limitations than the limitations included in the RFC determination. Plaintiff testified that he cannot move for three to four hours after waking and that he needs to sleep for 18 hours per day. AR 77-90. The ALJ determined that plaintiff has the RFC to perform sedentary work, and that he can sit with normal break for a total of six hours in an eight-hour work day. AR 18. If the ALJ properly considers plaintiff's subjective symptom testimony, it would follow that the ALJ may include additional limitations in the RFC. The ALJ's error with respect to plaintiff's credibility is not harmless and requires reversal. *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability determination).

III.    The ALJ's Evaluation of the Lay Witness Evidence

Plaintiff argues the ALJ erred in rejecting the lay witness testimony of his mother, Jill Harrison. Dkt. 12. Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such

testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Ms. Harrison testified at the first administrative hearing, completed a function report, submitted a letter, and in treatment notes described her observations of plaintiff to Dr. Berner. AR 91-101, 329-336, 363. Plaintiff argues that the ALJ improperly rejected this lay witness testimony, and failed to provide persuasive reasons to justify reject Ms. Harrison's testimony. Dkt. 12 at 13.

The ALJ found Ms. Harrison's observations were similar to plaintiff's report of his symptoms. AR 22. The ALJ rejected Ms. Harrison's observations for the same reasons he rejected plaintiff's subjective reporting, i.e., that they were inconsistent with the longitudinal treatment record, plaintiff's performance on physical and mental status exams, and plaintiff's independent daily activities. *Id.*

As explained above, the undersigned finds that the ALJ erred in finding plaintiff not credible. It is evident, then, that none of those reasons referred to by the ALJ in discrediting plaintiff's testimony may be used to discredit Ms. Harrison's testimony, either. Thus, here too the ALJ committed harmful error.

IV.    Remand for Further Administrative Proceedings

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an

1    error and there is uncertainty and ambiguity in the record, the district court should remand to the

2    agency for further proceedings. *Leon v. Berryhill*, 874 F.3d 1130, 1133-34 (9th Cir. 2017). If the

3    district court concludes that additional proceedings can remedy the errors that occurred in the

4    original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, 874

5    F.3d 648, 668 (9th Cir. 2017).

6            The Ninth Circuit has developed a three-step analysis for determining when to remand

7    for a direct award of benefits. Such remand is generally proper only

8            where "(1) the record has been fully developed and further administrative
             proceedings would serve no useful purpose; (2) the ALJ has failed to provide
9            legally sufficient reasons for rejecting evidence, whether claimant testimony or
             medical opinion; and (3) if the improperly discredited evidence were credited as
10           true, the ALJ would be required to find the claimant disabled on remand."

11   *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v, Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

12           The Ninth Circuit has recently applied the "credit-as-true" rule by first asking: Were the

13   ALJ's reasons for rejecting the evidence legally insufficient? *Leon*, 874 F.3d at 1133. Then,

14   having answered that question in the affirmative, the Court considered the second step in the

15   analysis: Are there remaining issues that must resolved before a disability determination can be

16   made, and would further administrative proceedings be useful? *Id.* The Court confirmed that the

17   third step would result in an award of benefits only if the questions at parts one and two of the

18   analysis are answered yes—and crediting the improperly discredited evidence as true, further

19   proceedings would appear to be unnecessary.

20           The Court in *Leon* held, even where the district court finds in the first part of the analysis

21   that the ALJ has failed to offer sufficient reasons for rejecting evidence, and also finds in the

22   second part of the analysis that there is "a fully developed record without any conflicts, gaps, or

23   ambiguities," and finally reaches the third part of the analysis and credits the rejected evidence as

24

25

true, it is still within the court's discretion whether to remand for further proceedings or for award of benefits. *Leon,* 874 F.3d at 1134. If, considering the record as a whole, there are reasons for the district court to have serious doubt as to whether the claimant is disabled, the district court retains discretion to remand to the agency for additional proceedings. *Id.* at 1135; *Revels,* 874 F.3d at 669-670.

The ALJ in this case erred in rejecting the evidence from Dr. Berner, Dr. Plevin, and plaintiff's mother and in discounting plaintiff's credibility. Issues regarding that evidence and plaintiff's credibility accordingly remain, and thus there is serious doubt as to whether plaintiff is in fact disabled. The undersigned therefore recommends reversing the ALJ's decision and remanding this matter for further consideration of those issues.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined plaintiff to be not disabled, and remand this matter for further administrative proceedings.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **January 12, 2018**, as noted in the caption.

Dated this 28th day of December, 2017.

Theresa L. Fricke
United States Magistrate Judge